# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| VADIM M. SHULMAN, BRACHA FOUNDATION; HORNBEAM CORPORATION, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 2019-0678-NAC |
| IGOR VALERYEVICH KOLOMOISKY; GENNADIY BORISOVICH; MORDECHAI KORF; PANIKOS SYMEOU; JOINT STOCK COMPANY COMMERCIAL BANK PRIVATBANK; WARREN STEEL HOLDINGS, LLC; OPTIMA ACQUISITIONS, LLC; OPTIMA GROUP, LLC; CC METALS AND ALLOYS, LLC; FELMAN TRADING, INC.; FELMAN PRODUCTION, LLC; OPTIMA FIXED INCOME, LLC; OPTIMAVENTURES, LLC; QUERELLA HOLDINGS, LTD.; OPTIMA INTERNATIONAL OF MIAMI, INC.; 5251 36TH STREET, LLC; GEORGIAN AMERICAN ALLOYS, INC.; HALLIWEL ASSETS, INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO AMEND

WHEREAS:

1.  Plaintiffs Vadim M. Shulman and Bracha Foundation (the "Initial Plaintiffs") commenced this action on August 23, 2019. Docket Index ("D.I.") 1.

2.  In the months following the commencement of the action, various defendants filed short-form motions to dismiss. During this time, the Initial Plaintiffs also sought to serve various foreign defendants via the Hague Convention.

3.  The Initial Plaintiffs filed their first amended complaint on November 27, 2019 (the "First Amended Complaint"). The First Amended Complaint added Hornbeam Corporation as a plaintiff (together with the Initial Plaintiffs, "Plaintiffs") and, according to Plaintiffs, deleted one defendant and added another with "no other substantive amendments." D.I. 103 ("Motion to Amend") ¶2.

4.  Various defendants again filed short-form motions to dismiss, and Plaintiffs continued efforts to effectuate service. This included briefing on Defendant Gennadiy Bogolyubov's motion for reargument of an order granting Plaintiffs permission to employ an alternative method of service. D.I. 51.

5.  Following oral argument, the Court denied the motion for reargument on July 28, 2020. D.I. 76. The Court entered an implementing order on August 11, 2020. D.I. 75.

6.  On March 3, 2021, the Court issued a letter staying briefing on Defendants' motions to dismiss pending motions to dismiss on *forum non*

2

*conveniens* grounds in a related matter, *PrivatBank v. Kolomoisky*, C.A. No. 2019-0377-JRS.  D.I. 86.

7.      On August 23, 2021, the Court issued its decision in the *PrivatBank v. Kolomoisky* matter.  The parties in this action filed a stipulated schedule for briefing on Defendants' motions to dismiss in mid-September 2021.  D.I. 91; D.I. 92.

8.      On October 20, 2021, various defendants filed their respective opening briefs in support of their motions to dismiss the November 2019 First Amended Complaint.  D.I. 93; D.I. 94; D.I. 95; D.I. 96; D.I. 97.

9.      On November 19, 2021, the parties agreed to a stipulated briefing schedule, which contemplated the submission of any opposition to Defendants' motions to dismiss briefing by December 17, 2021.  D.I. 101; D.I. 102.

10.      On December 17, 2021, Plaintiffs filed the Motion to Amend.

11.      The Defendants in this matter filed four separate sets of opposition papers in response, plus a short-form joinder.  D.I. 107; D.I. 109; D.I. 110; D.I. 111; D.I. 112.  Plaintiffs filed an omnibus reply in support of their Motion to Amend.  D.I. 116.

12.      Contemporaneously with these various filings, the Court issued a letter notifying the parties of Vice Chancellor Slights's retirement and that all applications for judicial decision would not be scheduled for a hearing until a new judge was sworn in.  D.I. 106.

13.	Having heard oral argument , I am now prepared to rule on Plaintiffs' Motion to Amend.

NOW, THEREFORE, the Court having carefully considered the Motion to Amend papers, oral argument on the motion, and the supplemental filings of the parties, IT IS HEREBY ORDERED, this 1st day of February 2023, as follows:

1.	Court of Chancery Rule 15(a) provides that leave to amend should be "freely given when justice so requires." Ct. Ch. R. 15(a). This Court interprets Rule 15(a) to "allow for liberal amendment in the interest of resolving cases on the merits." *Gould v. Gould*, 2011 WL 141168, at *7 (Del. Ch. Jan. 7, 2011). Leave to amend is typically granted unless the non-moving party can establish "undue prejudice, undue delay, bad faith, dilatory motive or futility of amendment[.]" *In re TGM Enters., L.L.C.*, 2008 WL 4261035, at *2 (Del. Ch. Sept. 12, 2008) (citation omitted). The most important factor in this context is consideration of undue prejudice. Indeed, in interpreting Superior Court Rule 15(a), which is substantially the same as Court of Chancery Rule 15(a), the Delaware Supreme Court has held that, "[i]n the absence of prejudice to another party, the trial court is required to exercise its discretion in favor of granting leave to amend." *Mullen v. Alarmguard of Delmarva, Inc.*, 625 A.2d 258, 263 (Del. 1993) (citation omitted).[1]

---

[1] I also note that "[t]his court rarely declines amendments under Rule 15(a) based on futility." *Twitter, Inc. v. Musk*, 2022 WL 4087797, at *1 (Del. Ch. Sept. 7, 2022) (rejecting argument that amendment would be futile given the "exceedingly movant-

4

2.    Although Plaintiffs' proposed amended complaint would constitute their second amendment, they argue that the First Amended Complaint did not make any substantive changes to the original complaint's fact allegations.[2]  Based on my review of the redline that accompanied the filing of the First Amended Complaint, Plaintiffs' characterization appears to be correct.

3.    Given this, Plaintiffs say that their proposed amendment should be viewed as essentially a routine response to Defendants' first set of opening dismissal briefs—indeed, a response specifically contemplated by the terms of Rule 15(aaa). Plaintiffs further argue that the proposed amendment reflects new facts that the Plaintiffs had learned since the filing of the First Amended Complaint.

4.    For their part, Defendants have raised a host of arguments in opposition to what Plaintiffs characterize as a routine motion to amend.[3]

5.    First, Defendant Joint Stock Company Commercial Bank PrivatBank ("PrivatBank") filed papers opposing the Motion to Amend on the grounds that Plaintiffs' proposed amended complaint sought to bring a claim for alleged violation

---

friendly standard of Rule 15(a)").  "Such arguments require the court to assess the merits of a claim on a highly truncated posture and before such claim has been pled; such arguments are therefore antithetical to the policy of resolving cases on the merits."  *Id*.

[2] Plaintiffs point out that the First Amended Complaint simply added a plaintiff, dropped a defendant, and added a defendant.

[3] Although I address the various bases for opposition according to the defendant who specifically made the argument, I note that various arguments have been reciprocally joined by co-defendants.

of the Delaware Organized Crime and Racketeering Act ("Delaware RICO") against PrivatBank. D.I. 109 ("PrivatBank Opp.") at 2–3. PrivatBank argued that Plaintiffs' Delaware RICO claim would be futile and, indeed, during the course of oral argument, Plaintiffs withdrew their request to add the claim. D.I. 130 ("Hr'g Tr.") at 26:5–27:2; *see also id*. at 30:3–9 ("[PrivatBank] agree[s] that [the Delaware RICO claims] would be futile[.]"). Accordingly, this portion of the Motion to Amend is denied as moot.

6. PrivatBank also asks that I parse Plaintiffs' proposed new factual allegations and make a determination that those allegations do not apply to PrivatBank. PrivatBank Opp. at 5–6. PrivatBank argues that the allegations are taken from PrivatBank's pleadings in the related action before this Court and that they, "in fact, actually strengthen PrivatBank's defenses in this case" and, "at least as to PrivatBank, should be denied." PrivatBank Opp. at 6. That may be, but PrivatBank does not cite any authority for its request that I decide now the applicability of various allegations as to PrivatBank versus other defendants. Accordingly, at least for purposes of ruling on the Motion to Amend, I decline PrivatBank's invitation to slice and dice Plaintiffs' complaint in that way.

7. Next, Defendant Gennadiy Bogolyubov ("Bogolyubov") argues that Plaintiffs' proposed amended complaint must be denied on bad faith grounds. D.I. 107 "(Bogolyubov Opp.") at 1–2. Bogolyubov asserts that, in response to

6

Defendants' briefing arguing for dismissal on laches grounds, Plaintiffs deleted, in bad faith, various allegations concerning dates and when Plaintiffs would have had notice of claims. *See* Bogolyubov Opp. at 9-10. Plaintiffs strongly object to Bogolyubov's argument, contending that the objection is essentially a meaningless critique of "Plaintiffs' drafting style." D.I. 116 ("Plaintiffs' Reply") at 5–8. In any event, this issue was resolved during oral argument. *See* Hr'g Tr. at 16:5–17:16, 35:3–40:15, 51:1–6, 65:1–11. Based on the parties' presentations—and as I discussed with the parties—during oral argument, to the extent Plaintiffs' First Amended Complaint references dates or notice matters, Defendants may continue to cite to those prior allegations in support of their dismissal arguments even if Plaintiffs' proposed amendment would delete such allegations. *Id.* I will consider any such citations in context, including based on Plaintiffs' assurances that their changes are ultimately immaterial.

8. The next argument concerns the objection of the "Loans Defendants" to the addition of Chaim Schochet and Uri Tzvi Laber as new defendant-parties to this action. D.I. 110 ("Loans Defs.' Opp.") at 2–4. The Loans Defendants assert that the proposed amended complaint is nearly devoid of specific factual allegations concerning Schochet and Laber. *Id.* 4–12. The Loans Defendants further argue that the addition of Schochet and Laber via amendment should be denied on Rule 15(c) grounds. *Id.* 8–12.

9. "Notwithstanding the general liberal policy toward amendments imparted by Rule 15, a motion to add or substitute a party after the statute of limitations has run must be denied if it fails to satisfy the requirements of Rule 15(c)." *Mullen*, 625 A.2d at 263 (citation omitted). "Rule 15(c)(3) establishes the 'relation back' doctrine" applicable here. *Allmaras v. Bd. Of Adj. of Sussex Cnty.*, 238 A.3d 142 (Del. 2020) (TABLE). In *Allmaras*, the Delaware Supreme Court affirmed the conclusion of the Superior Court that "a party seeking relief under Rule 15(c) must still show that it was mistaken as to the identity of the proper defendant." *Id*.

10. Here, the Loans Defendants' papers persuasively argue that Plaintiffs have adequately known of the identity of Schochet and Laber for many years. Plaintiffs do not engage with this argument in their papers and instead focus on whether Schochet and Laber "should have known that, but for Plaintiffs' mistake, they would have been named in" Plaintiffs' original complaint. Plaintiffs' Reply at 13–15. The problem for Plaintiffs is that they fail to make any showing that their decision not to name Schochet and Laber was an actual "mistake concerning the proper defendant[s'] identity" as that concept is understood under our law, as opposed to being simply a "fully informed decision" resulting from the sort of choices that parties and their counsel routinely make in the course of litigation. *Allmaras*, 238 A.3d 142. Based on the arguments presented to me, this is a case of

8

the latter. Plaintiffs' request to add Schochet and Laber as new party-defendants is "not entitled to relief under the relation back doctrine" and is accordingly denied. *Id.*

11. Defendants also raise, at various points, arguments that Plaintiffs' Motion to Amend reflects undue delay. *E.g.*, D.I. 111 ("Halliwel Defs.' Opp.") at 11–13. "Delay alone" is generally not a sufficient basis to deny a motion to amend. *Mullen*, 625 A.2d at 263 (citations omitted). This is Plaintiffs' first motion to amend, and their prior amendment as of right did not contain substantive changes to Plaintiffs' fact allegations. To the extent there was significant time between the commencement of the action and the filing of the Motion to Amend, a significant portion of that time involved efforts to effectuate service of foreign defendants and the stay of briefing on the motions to dismiss ordered by this Court. In any event, Plaintiffs filed their Motion to Amend within their stipulated time for briefing Defendants' motions to dismiss. I therefore do not find delay warranting denial of the Motion to Amend, particularly given this Court's liberal policy towards amendment.

12. Next, I turn to what I consider to be the most important factor in this context: whether the Motion to Amend would result in undue prejudice. Defendants' prejudice arguments are largely bound up in the arguments that I addressed above. Otherwise, Defendants complain that they expended resources in

9

preparing opening briefs in support of their original motions to dismiss. *E.g.,* Bogolyubov Opp. At 11–12; Halliwel Defs.' Opp. at 12–13. Defendants' cost arguments, however, do not provide a basis to deny the Motion to Amend here. *See NACCO Indus., Inc. v. Applica Inc.*, 2008 WL 2082145, at *2 (Del. Ch. May 7, 2008) ("The court is cognizant of the significant costs briefing such motions can incur. Even considering the expenses the defendants have already incurred, however, such costs do not rise to the level of 'undue prejudice.' Given the court's preference for resolving matters on the merits and the absence of material prejudice to the defendants, as well as the fact that leave to amend is freely given, the motion for leave to amend will be granted.").[4]

13.  Finally, I turn to the Halliwel Defendants' argument that allegations in Plaintiffs' proposed amended complaint materially contradict Plaintiffs' positions, including positions taken under oath, both in other litigation and in this action. Halliwel Defs.' Opp. at 8–9. The Halliwel Defendants assert that Plaintiffs' proposed amendment is a bad faith attempt to duck a ruling that various claims

---

[4] The Halliwel Defendants also demand that, if Plaintiffs' motion is granted, the Court direct that Plaintiffs pay defense counsel's fees incurred in preparing the original opening briefs in support of dismissal. Halliwel Defs.' Opp. at 12–13. The Halliwell Defendants cite *Lillis v. AT&T Corp.*, 896 A.2d 871, 878–79 (Del. Ch. 2005) in support. I deny the request for the same reasons the Court did in *NACCO*: "[T]he defendants' request that the plaintiffs' pay the defendants' costs and legal fees incurred in [ ] drafting the defendants' prior motion to dismiss will be denied. This is not a case, such as *Franklin Balance* or *Lillis*, in which the plaintiffs sought leave to amend only after defending their pleading with full briefing and oral argument." 2008 WL 2082145, at *3.

10

asserted by Plaintiffs are subject to jurisdiction in the British Virgin Islands. *Id.* at 6–9.

14.     For their part, Plaintiffs respond that the Halliwel Defendants take prior statements out of context and that Plaintiffs' positions have necessarily changed over time as Plaintiffs have engaged in a decade of litigation in numerous venues and learned more about alleged fraudulent activities that occurred many years ago. *Id.* at 7–8.

15.     At bottom, the Halliwel Defendants' argument relies on the charge that Plaintiff Shulman has previously acknowledged that he executed a unanimous consent, dated April 3, 2008 (the "2008 Consent"), transferring his direct membership interests in Warren Steel Holdings, LLC ("Warren Steel") to Halliwel Assets Inc., a BVI entity ("Halliwel"). *Id.* at 6–9. Per the Halliwel Defendants, the result of this transfer is that Shulman did not, and does not, own a direct interest in Warren Steel. *Id.* Pointing to the proposed amended complaint's allegations that the 2008 Consent is a forgery, the Halliwel Defendants argue that any allegation, or change in allegations, suggesting that Shulman has a direct ownership interest in Warren Steel is made in bad faith and must be rejected. *Id.*

16.     During oral argument, based on the statements of counsel, that argument seemed to have significant force. I therefore asked the parties to file supplemental briefing on the issue.

11

17.     In their supplemental briefing, Plaintiffs point out that, during oral argument, the Halliwel Defendants failed to note that Shulman made functionally the same assertions of forgery in a proceeding before England's High Court of Justice in May 2017.[5]  D.I. 129 ("Plaintiffs' Suppl. Br.").  More importantly, I also reviewed the original complaint and the First Amended Complaint and found the following allegation:

> A "unanimous written consent" dated April 3, 2008 and purportedly bearing the signatures of Plaintiff Shulman and Defendants Kolomoisky and Bogolyubov, states that the three Principals resigned as a shareholder of Warren Steel and approved Halliwel as the sole shareholder of Warren Steel.

---

[5] The Particulars of Claim that Mr. Shulman filed with England's High Court of Justice states as follows:

> [U]p until an investigation into Warren Steel was commenced by Mr. Shulman's adviser . . . in or around April or May 2012, it was Mr. Shulman's belief that . . . Mr. Shulman, Mr. Kolomoisky and Mr. Bogolyubov each held an equal direct shareholding in [Warren Steel]. . . .  [T]hat investigation revealed that Mr. Shulman's shareholding had been transferred to an intermediary company incorporated in the British Virgin Islands, called Halliwel Assets Inc. . . .  Pending disclosure and further investigation, Mr. Shulman's current understanding as to the ownership structure of [Warren Steel] derived from his ongoing investigations is as follows:
>
> 1. Halliwel was incorporated in the British Virgin Islands on 5 January 2006.
>
> 2. In around 2006, Mr. Shulman provided examples of his signature to Mr. Novikov to be used solely for the day-to-day running of the parties' joint investments, including WSH, but not for executing any substantive documents unless expressly approved by Mr. Shulman.
>
> 3. By a unanimous written consent purportedly signed on 3 April 2008, each of Mr. Shulman, Mr. Kolomoisky and Mr. Bogolyubov resigned as a shareholder of WSH and approved Halliwel as the sole shareholder of WSH. Mr. Shulman has no recollection of having signed or approved the resolution, and the Defendants are put to proof as to its validity and legal effectiveness.

Plaintiffs' Suppl. Br., Ex. A, ¶ 74.

12

Shulman had no knowledge of this occurrence and did not approve it. Any documents that bear his signature in this regard are false.

D.I. 1, ¶73; D.I. 30, ¶74.

18. Given these facts, I find the premise from which the Halliwel Defendants' argument flows is flawed. The forgery theory has been present in the pleadings since Plaintiffs commenced this action in August 2019.[6] In addition, I consider these issues in light of the circumstances of this litigation, which involves matters that have been the subject of proceedings for a decade in one form or another, in multiple domestic and foreign jurisdictions, involving numerous foreign parties and allegations of complex financial activities.

19. To be clear, I have concerns about Plaintiffs' prior statements, and I anticipate that this is not the last that I will hear of them in this action. But, at least for purposes of the Motion to Amend, I decline to find those concerns warrant denying the motion, particularly in light of this Court's policy in favor of resolving claims on the merits.

---

[6] I acknowledge that this theory seems difficult to square with other allegations that Plaintiffs made in their prior pleadings at various points. Plaintiffs seem to say that, at least as to some of their allegations suggesting that Hornbeam or Shulman owns interests in Halliwel and that Halliwel is in turn the sole owner of Warren Steel, those allegations simply reflect the ownership positions on the various entities' (allegedly fraudulent) records. This "all-of-the-above" approach may not be a model of pleading, but it is not, in these peculiar circumstances, a basis to foreclose Plaintiffs' opportunity to amend.

13

20. For these reasons, Plaintiffs' Motion to Amend is GRANTED IN PART as set forth above, on the condition that Defendants may reference allegations in Plaintiffs' First Amended Complaint in making any timeliness arguments. Plaintiffs' Motion to Amend (i) to add the Delaware RICO claim has been withdrawn and is therefore DENIED AS MOOT and (ii) to add Mr. Schochet and Mr. Laber as new defendants is DENIED.

*/s/ Nathan A. Cook*
Vice Chancellor Nathan A. Cook